## Z. M. Dunn v. Mary C. Trout.

1. MARRIAGE CONTRACT—*Sexual Intercourse no Excuse for a Refusal to Perform.*—If a man after engaging to marry a woman has sexual intercourse with her he can not for that reason break off the engagement and take advantage of his own wrong.

**Breach of Marriage Contract.**—Appeal from the Circuit Court of Champaign County; the Hon. FRANCIS M. WRIGHT, Judge, presiding. Heard in this court at the November term, 1899. Affirmed. Opinion filed February 27, 1900.

CHARLES H. KIENZLE and THOMAS J. SMITH, attorneys for appellant.

J. L. RAY, attorney for appellee.

MR. JUSTICE HARKER delivered the opinion of the court.

This is an appeal from a judgment of $500, recovered by appellee against appellant in a suit for breach of a marriage contract.

A reversal is urged because the verdict is not supported by the evidence and because the court erred in giving certain instructions for the plaintiff and in refusing others offered by the defendant. There is something said in the printed briefs about a variance between the proofs and the declaration, but as that objection is raised for the first time in this court and has but little merit in it we shall not discuss it.

The evidence shows that both parties are quite advanced in years. Appellee, a widow from Ohio, while visiting relatives and friends in Champaign county, met appellant, then a widower, early in July, 1897. A strong attachment at once sprang up between them. During her stay of six or seven weeks in Illinois, appellant frequently visited her, took her out riding and did various other acts indicating love and affection for her. She testified that during the time he made love to her and promised to marry her. When she returned to her home he accompanied her as far as

Dunn v. Trout.

Indianapolis.  She stated that when he left her he directed her to prepare for the marriage, which she did, and that he promised to come for her in a few weeks and bring her back to Illinois as his wife.  He testified positively that he never promised to marry her and denied many of the statements made by her.  In the conflict it was the peculiar province of the jury to say where the truth was.  After she reached home she received a number of letters of a very endearing character from him.  They tend strongly to corroborate her and doubtless influenced the verdict to a large extent.

Upon the trial appellant introduced testimony of illicit conduct on the part of appellee, which she denied, and which was so unreasonable in its character that we can not believe it.  It was to the effect that appellant had sexual intercourse with her at times and at a place so open and easy of detection that the jury could not have believed it.  It was upon that testimony that appellant asked the court to instruct the jury as follows:

"13.  You are instructed that though you may believe from the evidence that the defendant did promise to marry the plaintiff, believing at the time she was a chaste and virtuous woman, yet if the defendant afterward discovered from the plaintiff's acts that she was not a virtuous woman, then, and in that event of the proof, the defendant would have a right to refuse to marry the plaintiff, and you should find your verdict for the defendant."

The court rightly refused to give the instruction.  If appellant, after engaging to marry appellee, had sexual intercourse with her, he could not for that reason break off the engagement and thereby take advantage of his own wrong.

Appellant's twelfth refused instruction was fully covered by other given instructions.  There is nothing seriously wrong with the instructions given for appellee.

Seeing no error in the record that would justify a reversal of the judgment, the same is hereby affirmed.

Presiding Justice Wright, having presided at the trial in the court below, took no part in the decision of this case.